**Hector MONTERO–MARTINEZ;
Gregorio Pedro Montero–
Hernandez, Petitioners,**

v.

**John ASHCROFT,\* Attorney General
of the United States,
Respondent.**

**No. 99–70596.**

United States Court of Appeals,

---

\* John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General of the United States. Fed. R.App. P. 43(c)(2). The Attorney General of the United States, rather than the Immigration and Naturalization Service, is the proper respondent in a petition for review of an order of removal. *See* 8 U.S.C. § 1252(b)(3)(A).

Ninth Circuit.

Submitted** Jan. 31, 2001

Filed Jan. 16, 2002

** The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. 34(a)(2). We initially issued our opinion in this case dismissing the case for lack of jurisdiction. The Supreme Court then decided *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and we granted the petition for rehearing. The government, through the Solicitor General, confessed error in the position it had previously taken in the case in light of *St. Cyr*. We now replace the opinion filed on May 23, 2001, amended on May 30, 2001, and withdrawn on December 28, 2001, with this Opinion dismissing the petition on the merits.

Nicholas Marchi, Carney & Marchi, P.S., Seattle, Washington, for the petitioners.

David W. Ogden, Acting Assistant Attorney General, Karen Fletcher Torstenson, Assistant Director, and Robbin K. Blaya, Office of Immigration Litigation, Washington, DC. for the respondent.

Linton Joaquin, National Immigration Law Center, Los Angeles, California, and Marc Van Der Hout, Van Der Hout & Brigagliano, San Francisco, California, for the amici curiae.

Before: PREGERSON, SILVERMAN, and TALLMAN, Circuit Judges.

PREGERSON, Circuit Judge:

Gregorio Pedro Montero–Hernandez and Hector Montero–Martinez (Petitioners) seek review of a final order of removal issued by the Board of Immigration Appeals (BIA). The BIA determined that Petitioners were statutorily ineligible for cancellation of removal as non-permanent residents under 8 U.S.C. § 1229b(b)(1) because neither had a qualifying relative for the purposes of § 1229b(b)(1)(D). We deny the petition because Petitioners' argument that Montero–Hernandez's adult daughter qualifies as a "child" for the purposes of § 1229b(b)(1)(D) is without merit.

## I. FACTS AND PRIOR PROCEEDINGS.

Montero–Hernandez and Montero–Martinez are father and son. They are natives and citizens of Mexico who entered the United States in 1986.

In April 1997, the Immigration and Naturalization Service (INS) served upon Petitioners a Notice to Appear, alleging that Petitioners were removable under 8 U.S.C. § 1182(a)(6)(A)(i) because they had entered the United States without inspection. Petitioners admitted the allegations contained in the Notice and conceded removability. Because they had no other viable options for remaining in the United States, they applied for cancellation of removal pursuant to § 1229b(b)(1).

Petitioners appeared before an Immigration Judge (IJ) in April 1998. At the hearing, they both conceded that they did not have a qualifying relative under § 1229b(b)(1)(D). Although Montero–Hernandez had an adult daughter who was a lawful permanent resident, he acknowledged that she was too old to qualify as a child under the INS regulations.

The IJ found Petitioners statutorily ineligible for cancellation of removal and al-

lowed them to voluntarily depart within 60 days. Petitioners appealed to the BIA arguing that they were entitled to cancellation of removal. The BIA found them statutorily ineligible on the same grounds as did the IJ—because neither had a qualifying relative for the purposes of § 1229b(b)(1)(D).

Petitioners now ask this Court to review the BIA's decision. They argue in their petition that the BIA and IJ erred in concluding that Montero–Hernandez's adult daughter is not a "child" for the purposes of § 1229b(b)(1)(D) and that the BIA denied them procedural due process by "fail[ing] to evaluate the Petitioners['] claim for relief."

## II. WE HAVE JURISDICTION TO REVIEW THE BIA'S DETERMINATION OF THE PURELY LEGAL AND HENCE NON–DISCRETIONARY QUESTION OF WHETHER MONTERO–HERNANDEZ'S ADULT DAUGHTER QUALIFIES AS A "CHILD" FOR THE PURPOSES OF 8 U.S.C. § 1229b(b)(1)(D).

### A. Introduction

■ Initially, we have to determine whether Immigration and Naturalization Act (INA) § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), negates our jurisdiction

to review the BIA's[1] determination of the purely legal and hence non-discretionary question whether Montero–Hernandez's adult daughter qualifies as a "child" for the purposes of INA § 240(A)(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D). Under the heading "Denials of discretionary relief," § 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (2001).

The underlying discretionary relief sought by the petitioners in this case is cancellation of removal.[2] Because the petitioners are non-permanent residents, they must meet the eligibility requirements for cancellation of removal set forth in § 1229b(b)(1).[3] This section permits an IJ to cancel removal if an alien: (1) has resided in the United States continuously for at least 10 years; (2) is of good moral character; (3) has not been convicted of

---

1. Technically speaking, this appeal raises the question whether we can review decisions regarding discretionary relief by the Attorney General and his designees, which includes, *inter alia*, IJ, the BIA, INS District Directors, and INS Regional Commissioners. Practically speaking, however, appellate courts usually review *decisions by the BIA, so* this opinion uses "BIA" as a shorthand for the Attorney General and his designees.

2. Cancellation of removal is a new form of discretionary relief passed as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which was enacted on September 30, 1996. *See* Pub. L.

No. 104–208 (Division C), 110 Stat. 3009–546. In IIRIRA § 304, Congress eliminated INA § 212(c) relief as well as suspension of deportation, and instead provided for two forms of cancellation of removal, one for aliens who are legal permanent residents, and one for those who are not.

3. The statutory requirements for cancellation of removal differ depending on whether the alien is a permanent resident or a non-permanent resident. The former, less stringent, requirements, are codified at INA § 240A(a), 8 U.S.C. § 1229b(a), while the latter requirements are codified at INA § 240A(b), 8 U.S.C. § 1229b(b).

enumerated criminal offenses; and (4) can establish that removal would result in "exceptional and extremely unusual hardship" to the alien's spouse, parent, or child who is a U.S. citizen or a legal permanent resident. 8 U.S.C. § 1229b(b)(1) (2001).

The discrete question on appeal is whether Montero–Hernandez's adult daughter qualifies as a "child" for purposes of establishing the hardship requirement of § 1229b(b)(1)(D). This question would require us to review the BIA's construction of the INA, which is a pure question of law. This question would *not* require us to review a discretionary determination by the BIA. For the reasons explained below, we hold that under the jurisdiction-limiting provision of § 1252(a)(2)(B)(i), we retain jurisdiction to review the issue presented, because the BIA's determination of the purely legal and hence non-discretionary question whether Montero–Hernandez's adult daughter qualifies as a "child" for the purposes of § 1229b(b)(1)(D)—and the BIA's construction of the INA in general—is *not* a "judgment regarding the granting of relief."

## B. Discussion

■ We take as our starting point two important principles of statutory construction recently affirmed by the Supreme Court. First, there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 2278, 150 L.Ed.2d 347 (2001). Second, there is a " longstanding principle of construing any ambiguities in deportation statutes in favor of the alien.'" *Id.* at 2290 (quoting *INS v.*

*Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). In light of these principles, we should construe narrowly restrictions on jurisdiction. *See Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 482–83, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (finding the scope of the jurisdictional bar in INA § 242(g), 8 U.S.C. § 1252(g), to be "much narrower" than the parties assumed, and to be limited to review of the "three discrete actions" listed in the statute).

■ With these principles in mind, we turn to the language of § 1252(a)(2)(B)(i). It is well-established that if the "language at issue has a plain and unambiguous meaning.... [o]ur inquiry must cease...." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). But "judgment" as used in § 1252(a)(2)(B)(i) does not have a "plain and unambiguous" meaning, because the statute does not define the term, and "judgment" could *either* mean "any decision" or "any decision involving the exercise of discretion."[4]

■ Our observation that the meaning of the word "judgment" is ambiguous is based on a careful study of the entire INA, which is codified at Title 8 of the U.S. Code. This study is revealing: when the word "judgment" is not being used in the INA to refer to a formal order given by a court (i.e., a "judgment of conviction"), it is *only* used to refer to the exercise of discretion, or to a discretionary determination.[5]

---

**4.** *See also* the term's two common definitions as either "a formal utterance of an authoritative opinion" or "the process of forming an opinion or evaluation." Webster's Collegiate Dictionary 633 (10th ed. 1998).

**5.** Aside from the use of "judgment" currently at issue, the word "judgment" appears thir-

teen times in the INA. Of these thirteen appearances, "judgment" is used eight times to refer to a formal decision given by a court. *See, e.g.,* 8 U.S.C. § 1101(a)(48)(A) ("The term 'conviction' means, with respect to an alien, a formal *judgment* of guilt of the alien entered by a court...."); 8 U.S.C. § 1158(b)(2)(A)(ii)

This suggests that Congress similarly intended the word "judgment" in § 1252(a)(2)(B)(i) to refer only to discretionary determinations. Indeed, it is a well-established canon of statutory interpretation that where Congress uses the same word or phrase throughout a statute, Congress generally intends the word or phrase to have the same meaning each time Congress uses it. *Weaver v. United States Information Agency*, 87 F.3d 1429, 1437 (D.C.Cir.1996) (citing *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204, (1932)) ("Normally, the same word appearing in different portions of a single provision or act is taken to have the same meaning in each appearance.").

Also, the embedding of the term "judgment" in the phrase "judgment regarding the granting of relief" in § 1252(a)(B)(i) shows that the provision does not apply to the order or decision itself, but only to a judgment regarding the order or decision. The only judgment exercised regarding the order or decision lies in the Attorney General's discretionary authority to determine who among the eligible persons should be granted discretionary relief. No judgment is exercised with respect to the mere eligibility for discretionary relief that is at issue here.

■ The structure of § 1252(a)(2)(B) further supports interpreting "judgment" to refer only to discretionary determinations. Subsection (i) of § 1252(a)(2)(B) states that courts cannot review certain "judgments" made by the Attorney General;[6] subsection (ii) of § 1252(a)(2)(B) states that courts also cannot review "any *other* decision[s]" that are within the discretion of the Attorney General. Read together, it seems clear that the "judgments" referred to in subsection (i) must also be

("[T]he alien, having been convicted by a final *judgment* of a particularly serious crime, constitutes a danger to the community of the United States...."); 8 U.S.C. § 1227(a)(2)(D) ("Any alien who at any time has been convicted (the *judgment* on such conviction becoming final)....").

In the five remaining appearances (not including the one at stake in this appeal), "judgment" only refers to the exercise of discretion, or to a discretionary determination. *See* 8 U.S.C. § 1103(a)(7) ("[The Attorney General] may, with the concurrence of the Secretary of State, establish offices of the Service in foreign countries; and, after consultation with the Secretary of State, he may, whenever in his *judgment* such action may be necessary to accomplish the purposes of this chapter, detail employees of the Service for duty in foreign countries."); 8 U.S.C. § 1153(d)(5) ("Supervisor.—The term, 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively recommend such action, if in connection with the foregoing the exercise of such authority is not merely of a

routine or clerical nature, but requires the use of independent *judgment.*") 8 U.S.C. § 1226(e) ("The Attorney General's discretionary *judgment* regarding the application of this section shall not be subject to review."); 8 U.S.C. § 1252(b)(4)(D) ("The Attorney General's discretionary *judgment* whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion."); 8 U.S.C. § 1537(b)(2)(A) ("The removal of an alien shall be to any country which the alien shall designate if such designation does not, in the *judgment* of the Attorney General ... impair the obligation of the United States under any treaty....").

6. The fact that the provision appears in a section entitled "Denials of discretionary relief" is not without significance. The Supreme Court has recently reaffirmed that the title of a statute, although it " 'cannot limit the plain meaning of the text,' " is nevertheless of use when it, as here, "shed[s] light on some ambiguous word or phrase." *St. Cyr*, 121 S.Ct. at 2284 (quoting *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)) (alteration in original).

decisions that are within the discretion of the Attorney General. If "judgment" in subsection (i) is interpreted to encompass all decisions, discretionary and non-discretionary, then the word "other" in subsection (ii) becomes superfluous.[7]

Next, when § 1252(a)(2)(B)(i) is read together with § 1252(a)(2)(A)(i) which directly precedes it in the statutory code, the intent of § 1252(a)(2)(B)(i) becomes even clearer. A comparison of the two subsections demonstrates that when Congress meant to strip jurisdiction over all matters relating to an immigration order or decision, it did so unequivocally and unambiguously, probably because of the two presumptions set forth at the outset of this section. Section 1252(a)(2)(A)(i) states that "no court shall have jurisdiction to review ... *any individual determination* or to entertain *any other cause or claim arising from or relating to* the implementation or operation of an *order* of removal pursuant to section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(i) (2001) (emphasis added). By contrast, § 1252(a)(2)(B)(i) states that "no court shall have jurisdiction to review ... any *judgment regarding* the granting of relief...." 8 U.S.C. § 1252(a)(2)(B)(i) (2001) (emphasis added). The broad and all inclusive scope of sub-section (A)(i) when contrasted with the far more limited language of (B)(i), as well as the use of the term "order" in (A)(i) and not in (B)(i), makes clear the Congressional intent to deal only with discretionary determinations in subsection (B)(i)—only with the exercise of the Attorney General's judgment.

If Congress had wanted to eliminate judicial review over *all* decisions by the BIA regarding discretionary relief, surely it would have employed the same language in § 1252(a)(2)(B)(i) that it employed in § 1252(a)(2)(A)(i), which directly precedes § 1252(a)(2)(B)(i) in the statutory code. In other words, Congress could have written § 1252(a)(2)(B)(i) to read: "[N]o court shall have jurisdiction to review *any individual determination* regarding the granting of relief under [various provisions in the INA setting forth eligibility requirements for discretionary relief]." But Congress did not use the phrase, "any individual determination." Instead, Congress used the term "judgment."[8]

A thorough review of other INA sections also reveals that when Congress really wanted to eliminate judicial review over all determinations made by the BIA, discretionary and nondiscretionary, it certainly

---

**7.** On the other hand, the narrow reading of § 1252(a)(2)(B)(i) we adopt today does not make § 1252(a)(2)(B)(ii) superfluous. Rather than being superfluous, clause (ii) is a catch-all provision that serves to ensure that any unenumerated provisions governing discretionary relief are covered. The fact that clause (i) contains the principal statutory provisions Congress sought to affect and clause (ii) adds "any other" discretionary decisions in no way renders either of the two clauses superfluous. In fact, inclusion of both clauses in the statute constitutes a fairly customary or traditional way of ensuring that all the relevant provisions are covered.

**8.** The relevant transitional rule, IIRIRA § 309(c)(4)(E), provides that "there shall be no appeal of any discretionary decision under [various INA sections setting forth eligibility requirements for discretionary relief]." The permanent rule substitutes the phrase "any judgment" for the phrase "any discretionary decision" in the transitional rule. The sparse legislative history describing the scope of § 1252(a)(2)(B) does not explain the change. The House Conference Report accompanying IIRIRA described § 242(a)(2)(B) in the following manner:

> This subsection ... bars judicial review (1) of any judgment whether to grant relief under section 212(h) or (i), 240A, 240B, or 245, [and] (2) of any decision or action of the Attorney General which is specified to be in the discretion of the Attorney General (except a discretionary judgment whether to grant asylum as described in section 242(b))....

knew how to write a statute unambiguously to accomplish that purpose. INA § 240B(f), 8 U.S.C. § 1229c(f), for example, states, "No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) [which permits an IJ to grant voluntary departure at the conclusion of removal proceedings]." Congress similarly could have stated in § 1252(a)(2)(B)(i) that "No court shall have jurisdiction over an appeal from denial of [inter alia] a request for a cancellation of removal under § 1229b." Instead, Congress chose not to do so.

Provisions limiting judicial review in the asylum context further illustrate this point. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3), states, "No court shall have jurisdiction to review *any determination* of the Attorney General under paragraph (2)." (emphasis added). *See also* INA § 208(b)(2)(D), 8 U.S.C. § 1158(b)(2)(D) ("There shall be no judicial review of *a determination* of the Attorney General under subparagraph (A)(v).") (emphasis added). That Congress used the word "determination" in all of these other contexts to refer to a decision of the Attorney General, but used the word "judgment" *only* in § 1252(a)(2)(B)(i) is additional evidence that Congress intended by § 1252(a)(2)(B)(i) to remove judicial review of only discretionary decisions by the BIA.

To summarize: The meaning of "judgment" in § 1252(a)(2)(B)(i) is unclear because the statute does not define the term, and it could mean "any decision" of the BIA, or it could mean "a decision involving the exercise of discretion." We know, however, that in the INA as a whole, Congress *only* uses the word "judgment" to refer to the exercise of discretion or a discretionary determination when it is not being used to refer to a judgment of conviction. Moreover, when § 1252(a)(2)(B)(i) is read together with §§ 1252(a)(2)(A)(i) and

(B)(ii) which directly precede and follow it in the statutory code, it seems clear that the "judgments" referred to in § 1252(a)(2)(B)(i) are "decisions ... [within] the discretion of the Attorney General." A review of the INA as a whole further demonstrates that when Congress really wanted to preclude review of all decisions by the BIA regarding discretionary relief, it knew how to do so in unambiguous terms. Instead of eliminating review over "any appeal," "all decisions," or "any determination" regarding discretionary relief, however, Congress instead chose to eliminate review over "judgments" in § 1252(a)(2)(B)(i). On the basis of this evidence, we conclude that § 242(a)(2)(B)(i) eliminates jurisdiction only over decisions by the BIA that involve the exercise of discretion. Accordingly, we retain jurisdiction over the BIA's determination of the purely legal and hence non-discretionary question whether Montero–Hernandez's adult daughter qualifies as a "child" for the purposes of 8 U.S.C. § 1229b(b)(1)(D).

Because we hold that we have jurisdiction to review the BIA's determination that Petitioners were statutorily ineligible for cancellation of removal as non-permanent residents under 8 U.S.C. § 1229b(b)(1), we do not have to address the question of whether a federal district court would have habeas corpus jurisdiction over the matter. We decline the government's invitation on rehearing to consider whether direct review by petition to this Court precludes relief via habeas corpus petition.

## III. MONTERO–HERNANDEZ'S ADULT DAUGHTER DOES NOT QUALIFY AS A "CHILD" FOR THE PURPOSES OF 8 U.S.C. § 1229b(b)(1)(D).

Petitioners argue that the BIA and IJ erred in concluding that Montero–Her-

nandez's adult daughter is not a "child" for the purposes of 8 U.S.C. § 1229b(b)(1)(D) and that the BIA denied them procedural due process by "fail[ing] to evaluate the Petitioners['] claim for relief."[9] We review the legal determinations of the BIA *de novo*. *Andreiu v. Ashcroft*, 253 F.3d 477, 482 (9th Cir.2001) (en banc) (citing *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc)).

■ Title 8 U.S.C. § 1101(b) states: "As used in subchapters I and II of this chapter [i.e., chapter 12]—(1) The term 'child' means an unmarried person *under twenty-one years of age....*" (Emphasis added). Section 1229b(b)(1)(D) is part of subchapter II of chapter 12 and thus is covered by this definition of the term "child." Montero–Hernandez's daughter was born on December 12, 1970, and, therefore, was over twenty-one years of age at all times relevant to these proceedings. As a result, she does not qualify as a "child" for the purposes of 8 U.S.C. § 1229b(b)(1)(D) and Petitioners' challenge to the final order of removal issued by the BIA must fail.

## IV. CONCLUSION.

Because Petitioners' argument that Montero–Martinez's adult daughter qualifies as a "child" for purposes of 8 U.S.C. § 1229b(b)(1)(D) is without merit, their challenge to the final order of removal issued by the BIA must fail.

**PETITION DENIED.**

H.R. Conf. Rep. 104–828, at 485–86 (1996). This description is unhelpful because it does not specify whether a non-discretion-

ary decision regarding statutory eligibility is a "judgment whether to grant relief." The House Conference Report clarifies § 242(a)(2)(B)(i) only in one respect: the *ultimate* decision whether to grant relief, which is indisputably discretionary, is not subject to judicial review. *See, e.g.,* INA §§ 240A(a), (b), 8 U.S.C. §§ 1229b(a), (b) (providing that Attorney General "may" cancel removal upon a finding that the alien is statutorily eligible for relief). Under our interpretation of the word "judgment," we also do not have jurisdiction over this ultimate decision because it is discretionary. In the absence of any indication in the legislative history that the change from the transitional to the permanent rule was intended to broaden the jurisdiction–stripping language in § 1252(a)(2)(B)(i), and in light of overwhelming evidence discussed *supra* and *infra* in this opinion that § 1252(a)(2)(B)(i) removes judicial review of only discretionary decisions by the BIA, the change from the transitional to the permanent rule does not justify a contrary conclusion.

---

**9.** Before the IJ, Petitioners through their attorney conceded that "under the law as it stands today neither respondent has a qualifying relative. The lead respondent has an adult and resident daughter, but the regs are clear it must be a child." Petitioners thus arguably waived this issue on appeal. *See BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir.2000) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case. It is immaterial whether the issue was not addressed ... because it was not raised, or because it was raised but conceded by the party seeking to revive it on appeal.") (citations omitted).