Rosalba **RAMIREZ–PEREZ,**
Petitioner,

v.

John **ASHCROFT,** Attorney
General, Respondent.

No. 02–71038.

United States Court of Appeals,
Ninth Circuit.

Submitted March 6, 2003.*

Filed July 18, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Walter Rafael Pineda, Law Offices of Walter Rafael Pineda, Redwood City, CA, for the petitioner.

Robert D. McCallum, Jr., Richard M. Evans, and Michael T. Dougherty, U.S. Department of Justice, Washington, DC, for the respondent.

Before T.G. NELSON, SILVERMAN, and McKEOWN, Circuit Judges.

## OPINION

T.G. NELSON, Circuit Judge.

Rosalba Ramirez–Perez appeals the decision of the Board of Immigration Appeals ("BIA") denying her request for cancellation of removal. She asserts two due process challenges. First, she argues that the BIA's interpretation of "exceptional and extremely unusual hardship" violates her due process rights. Second, she argues that the BIA's use of its summary affirmance ("streamlining") procedures,

whereby a single BIA member decides an appeal without a separate opinion, violates her procedural due process rights.

We reject both claims. We have jurisdiction to review whether the BIA's interpretation of the hardship standard violates the Constitution. However, the BIA's interpretation is well within the broad bounds of the statutory language and does not violate due process. We further hold that the BIA's streamlining procedures do not violate due process. Thus, we deny the petition.

## I. FACTUAL AND PROCEDURAL HISTORY

A citizen of Mexico, Ramirez–Perez came to the United States illegally. On April 9, 1998, the Immigration and Naturalization Service ("INS")[1] issued a notice to appear. Ramirez–Perez conceded deportability and requested cancellation of removal. The Immigration Judge ("IJ") held a hearing on May 16, 2001, to evaluate Ramirez–Perez's circumstances.[2]

Ramirez–Perez was born in Mexico in 1967. She testified that she came to the United States in 1987, living and working with her father and brother in Turlock, California. From 1987 until November 1995, she lived with her family at a house on Fulkerth Road in Turlock. She then moved away for one year, but returned from September 1996 until December 1998. Her cousin, Jose Isabel Perez, testified on her behalf. However, he was unable to substantiate some parts of Ramirez–Perez's account. Ramirez–Perez submitted a letter from her employer supporting her claim. The letter contained additional inconsistencies.

Ramirez–Perez has a child, who is a United States citizen and was born in 1999. The child's father is also a United States citizen. He sees the child frequently and pays child support. Although Ramirez–Perez testified that she would take her child to Mexico if deported, she also testified that the father said the child would remain with him.

Ramirez–Perez has siblings in the United States, but her parents and some of her siblings reside in Mexico. She and her son would be unable to live with her family in Mexico. According to Ramirez–Perez, her parents do not want to see her because she had her child out of wedlock.

The IJ found that Ramirez–Perez was not eligible for cancellation of removal relief.[3] The IJ determined that Ramirez–Perez failed to establish the ten years' continuous presence statutory prerequisite. The IJ made no credibility finding as to Ramirez–Perez. However, the IJ gave little weight to the employer's letter because it used the name "Rosalva" instead of "Rosalba" Ramirez–Perez. Additional-

---

1. As of March 1, 2003, the INS has been abolished and its functions transferred to the Department of Homeland Security. *Ciorba v. Ashcroft*, 323 F.3d 539, 539 n. 1 (7th Cir. 2003). We refer to it as the INS in this opinion.

2. Because proceedings against Ramirez–Perez commenced after April 1, 1997, the final rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 apply to this case. *See Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997).

3. Cancellation of removal is a discretionary form of relief. *See* 8 U.S.C. § 1229b(b)(1). An alien must establish four statutory prerequisites to be eligible for cancellation of removal: (1) that the alien has been in the United States for ten years; (2) that the alien is of good moral character; (3) that the alien has not been convicted of any enumerated offenses; and (4) that "exceptional and extremely unusual hardship" would result to a qualifying United States citizen or lawfully admitted alien relative. *Id.* § 1229b(b)(1)(A)-(D).

ly, the letter and Ramirez–Perez's testimony contained inconsistent dates for when her employment terminated. Finally, the IJ noted that the letter, while containing an original signature, appeared to be two documents pasted together. The IJ gave little weight to Ramirez–Perez's cousin's testimony because Ramirez–Perez testified that the Fulkerth Road house had three bedrooms, while he testified that it had two bedrooms.[4]

The IJ also concluded that Ramirez–Perez failed to establish the fourth prerequisite: "exceptional and extremely unusual hardship." The difficulties that Ramirez–Perez's child might face would not be materially different from those faced by any child who relocates with a parent at a young age. Additionally, the IJ concluded that Ramirez–Perez's child was in good health and possibly could stay with his father in the United States. Because Ramirez–Perez failed to establish the statutory prerequisites for cancellation of removal, the IJ denied relief.

Ramirez–Perez appealed to the BIA. She argued that the record showed that she met the ten years' continuous presence requirement because her evidence in favor was unrefuted. In addition, she contended that the IJ abused its discretion in the hardship finding by failing to consider all of the factors and failing to evaluate their cumulative effect.

On April 3, 2002, the BIA affirmed, without opinion, pursuant to 8 C.F.R. § 3.1(a)(7). Ramirez–Perez timely appealed.

## II. THE BIA'S INTERPRETATION OF THE HARDSHIP STANDARD DOES NOT VIOLATE RAMIREZ–PEREZ'S DUE PROCESS RIGHTS

Ramirez–Perez contends that the BIA's interpretation of the hardship standard contradicts congressional intent to such a degree that it violates her due process rights. The Government replies that we lack jurisdiction to review whether the BIA's interpretation of the hardship standard violates due process. Thus, we must address our jurisdiction before reaching the merits of Ramirez–Perez's first claim.[5]

A. *We retain jurisdiction to consider whether the BIA's interpretation of the hardship standard violates due process.*

 We retain jurisdiction to review constitutional claims, even when those claims address a discretionary decision. Although we lack jurisdiction to review whether an alien has established exceptional and extremely unusual hardship,[6] we retain jurisdiction to consider whether the BIA's interpretation of the hardship standard violates due process. However, we emphasize that our *only* task is to ensure that the BIA's construction of the statutory terms does not stray beyond the wide range of possible interpretations encompassed by those terms.

---

**4.** The "house" is a duplex. Each of the two houses has two bedrooms, one living room, and one kitchen. Thus, the total number (counting both houses) is four bedrooms, two living rooms, and two kitchens.

**5.** *Cedano–Viera v. Ashcroft,* 324 F.3d 1062, 1064 (9th Cir.2003) ("'[W]e must resolve our jurisdiction first."); *Herman Family Revocable Trust v. Teddy Bear,* 254 F.3d 802, 807 (9th Cir.2001) (holding that "a court lacking juris-

diction to hear a case may not reach the merits").

**6.** 8 U.S.C. § 1252(a)(2)(B)(i); *Romero–Torres v. Ashcroft,* 327 F.3d 887, 892 (9th Cir.2003) (holding that we lack jurisdiction to review whether alien has established exceptional and extremely unusual hardship to qualify for cancellation of removal because the determination of hardship is too discretionary).

■ Congress intended to make cancellation of removal relief available in some compelling circumstances.[7] Thus, if the BIA interpreted "exceptional and extremely unusual hardship" to mean that no hardship showing would *ever* be sufficient, its interpretation would be so divorced from Congress's mandate as to violate the Constitution.[8] The same conclusion would follow if the BIA interpreted "exceptional and extremely unusual hardship" at the other extreme—if, for example, the BIA interpreted the requirement to mean that an alien with a qualifying relative need only show that the relative would be sad if the BIA removed the alien.[9] Once we determine that the BIA's interpretation is anywhere within the broad range authorized by the statutory language, our inquiry ends.[10]

■ The jurisdiction-stripping provisions of the immigration laws do not apply to Ramirez–Perez's constitutional claim. The one relevant provision, 8 U.S.C. § 1252(a)(2)(B)(i), prohibits us from exercising jurisdiction over any "judgment regarding the granting of" cancellation of removal relief. Under this provision, we lack jurisdiction to review discretionary decisions in the cancellation of removal context.[11] Thus, we may not review whether an alien established exceptional and extremely unusual hardship.[12]

■ The Government urges that § 1252(a)(2)(B)(i) also removes our jurisdiction over Ramirez–Perez's claim. We disagree. We read § 1252(a)(2)(B)(i)'s language narrowly, construing any ambiguities in its language in favor of Ramirez–Perez and in favor of judicial review.[13] Whether the BIA's interpretation of the hardship standard violates due process is not a "judgment regarding the granting of" cancellation of removal relief.[14] Rather, it presents a question of statutory construction. Thus, we conclude that § 1252(a)(2)(B)(i) does not preclude our review of Ramirez–Perez's constitutional claim.[15]

---

7. *See* 8 U.S.C. § 1229b(b) (outlining eligibility requirements for this form of discretionary relief).

8. Such an interpretation would undermine Congress's intent that cancellation of removal should be available in compelling cases. *See In re Monreal–Aguinaga,* 23 I. & N. Dec. 56, § II (2001).

9. Such an interpretation would undermine Congress's intent that cancellation of removal should be reserved for exceptional cases. *See id.*

10. Thus, we may not attempt to interpret the hardship standard ourselves or apply it to an alien's case. *See Romero–Torres,* 327 F.3d at 891–92.

11. *See Montero–Martinez v. Ashcroft,* 277 F.3d 1137, 1141, 1144 (9th Cir.2002) (holding that § 1252(a)(2)(B)(i) only removes our jurisdiction over discretionary decisions in cancellation of removal proceedings).

12. *Romero–Torres,* 327 F.3d at 892 (noting that whether an alien has established exceptional and extremely unusual hardship is a discretionary question in the cancellation of removal process over which we lack jurisdiction).

13. *Montero–Martinez,* 277 F.3d at 1141.

14. 8 U.S.C. § 1252(a)(2)(B)(i). *Cf. Montero–Martinez,* 277 F.3d at 1141 (holding that we retain jurisdiction to review the "BIA's construction of the INA, which is a pure question of law" as to whether an adult daughter qualifies as a "child" for the purpose of establishing "exceptional and extremely unusual hardship").

15. The Government's reliance upon *Ekimian v. INS,* 303 F.3d 1153 (9th Cir.2002), is misplaced. Our conclusion that we lacked jurisdiction in *Ekimian* rested upon our determination that no standard existed by which we could judge the BIA's refusal to reopen a case on its own motion. *Id.* at 1156–59. No stat-

We retain jurisdiction to consider whether the BIA's interpretation of the hardship standard violates due process. Accordingly, we now turn to the merits of Ramirez–Perez's claim.

B. *The BIA's interpretation of the hardship standard does not violate due process.*

■ We reject Ramirez–Perez's claim for two reasons. First, Ramirez–Perez does not challenge before us the IJ's determination that she failed to show ten years' continuous presence. Thus, Ramirez–Perez cannot show that she was prejudiced by the BIA's application of its hardship standard to her case.[16]

■ Second, because the BIA's interpretation falls well within the broad range authorized by the statutory language, we must defer to it.[17] The BIA has not exceeded its broad authority by defining "exceptional and extremely unusual hardship" narrowly.[18] The BIA concluded that the "exceptional and extremely unusual hardship" standard is a higher standard than the "extreme hardship" standard under 8 U.S.C. § 1254(a)(1), the former provision governing this issue.[19] As the BIA observed, in order to satisfy the hardship standard, Congress intended to require an alien to " 'provide evidence of harm to his spouse, parent, or child substantially beyond that which ordinarily would be expected to result from the alien's deportation.' "[20] Thus, in evaluating hardship, the BIA considers "the ages, health, and circumstances of qualifying" relatives.[21] However, although the BIA will consider the fact that the country of return has a lower standard of living (to the extent it would affect the qualifying relative), such a fact would normally "be insufficient in [itself ] to support" a hardship determination.[22]

This interpretation of the hardship standard comports with the statutory language and congressional intent. It does not vio-

ute addressed the issue. *Id.* at 1157–58. Thus, Congress provided no guidance as to its intent. Further, the BIA itself had only stated that it may reopen on its own motion under exceptional circumstances. *Id.* at 1156–58. In contrast, Congress has provided guidance about what kind of hardship an alien must show. 8 U.S.C. § 1229b(b)(1)(D); *see also Monreal–Aguinaga*, 23 I. & N. Dec. § II (describing guidance on the meaning of the hardship standard that legislative history provides). Additionally, a long history of BIA and court construction accompanies the current hardship standard and its earlier incarnations. *See, e.g., Monreal–Aguinaga*, 23 I. & N. Dec. § II (describing history of the hardship standard's interpretation). Thus, we have guidance to evaluate the BIA's construction of the hardship standard.

16. *Sanchez–Cruz v. I.N.S.*, 255 F.3d 775, 779 (9th Cir.2001) (stating that an alien must show prejudice to succeed in a due process challenge).

17. *See INS v. Wang*, 450 U.S. 139, 144, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (caution-

ing, in addressing the former "extreme hardship" standard, that the BIA's "construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute").

18. *See id.* at 144–45, 101 S.Ct. 1027 (holding that Congress conferred authority upon the INS to define "extreme hardship" and that a narrow definition is consistent with the statutory language). *See generally Monreal–Aguinaga*, 23 I. & N. Dec. 56 (discussing BIA's interpretation of "exceptional and extremely unusual hardship").

19. *Monreal–Aguinaga*, 23 I. & N. Dec. § II (noting that this interpretation is consistent with the legislative history of the provision).

20. *Id.* (quoting H.R. Conf. Rep. No. 104–828).

21. *Id.* § III.

22. *Id.*

late due process. Even if it did, Ramirez–Perez was not prejudiced by the BIA's application of its hardship standard to her case. Thus, we reject Ramirez–Perez's due process challenge to the BIA's interpretation of the hardship standard.

## III. THE BIA'S STREAMLINING PROCEDURES DO NOT VIOLATE RAMIREZ–PEREZ'S DUE PROCESS RIGHTS

■ We rejected an identical claim to Ramirez–Perez's second due process challenge in *Falcon Carriche v. Ashcroft.*[23] Ramirez–Perez raises no new arguments. Thus, *Falcon Carriche* governs and Ramirez–Perez's due process challenge to the streamlining procedures fails.[24]

## IV. CONCLUSION

We deny the petition. We retain jurisdiction to review whether the BIA's interpretation of the hardship standard violates due process. However, our review is limited to assuring that the BIA's interpretation falls within the broad range the statutory language authorizes. Because the BIA's interpretation is well within those limits and she failed to show prejudice, we reject Ramirez–Perez's first due process claim. Consistent with our conclusion in *Falcon Carriche*, we likewise reject Ramirez–Perez's second claim that the streamlining procedures violate her procedural due process rights.

PETITION DENIED.

23. 335 F.3d 1009.

24. *Id.*