**F I L E D**

<u>PUBLISH</u>

MAR 9 2004

**UNITED STATES COURT OF APPEALS**

**PATRICK FISHER**
**Clerk**

**TENTH CIRCUIT**

---

REYES ALVAREZ-DELMURO,
SOLEDAD ALVAREZ-COLAZO,

      Petitioners,

v.

JOHN ASHCROFT, United States
Attorney General,

      Respondent.

No. 02-9572

---

**Petition for Review of an Order
of The Board of Immigration of Appeals
(Nos. A 93 495 076 and A 76 322 692)**

---

Marti L. Jones, Immigration Project, Granite City, Illinois, (Marlene F. Gonzalez,
Multi-Cultural Legal Center, Salt Lake City, Utah, with him on the briefs) for
Petitioners.

Ernesto H. Molina, Jr., Senior Litigation Counsel, Office of Immigration
Litigation, Civil Division, United States Department of Justice, Washington, D.C.,
(David V. Bernal, Assistant Director, Office of Immigration Litigation, Civil
Division, United States Department of Justice, Washington, D.C., with him on the
brief) for Respondent.

---

Before **KELLY**, **HENRY**, and **LUCERO**, Circuit Judges.

---

**HENRY**, Circuit Judge.

Petitioners Reyes Alvarez-Delmuro and Soledad Alvarez-Colazo, husband and wife, are natives and citizens of Mexico who face removal from this country. They seek review of the decision of the Immigration Judge (IJ) that they are not eligible for cancellation of removal. The Board of Immigration Appeals (BIA) affirmed, without opinion, the decision of the IJ, making the IJ's decision the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4). Respondent asserts that 8 U.S.C. § 1252(a)(2)(B) deprives this Court of jurisdiction to review the IJ's determination. In keeping with our recent decision in *Morales Ventura v. Ashcroft*, 348 F.3d 1259 (10th Cir. 2003), we agree.

## I. Background

The Alvarezes concede that they entered the United States together without inspection on January 8, 1986, making them subject to removal. In removal proceedings, the Alvarezes applied for relief under 8 U.S.C. § 1229b(b)(1), which permits the Attorney General to cancel removal of an inadmissable or deportable alien who

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title (except in a case described in section 1227(a)(7) of this title where the Attorney General exercises discretion to grant a waiver); and

2

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The IJ determined that the Alvarezes satisfied subparagraphs (A), (B), and (C), but that they did not satisfy subparagraph (D).

The Alvarezes claimed that they met the requirements of subparagraph (D) because their removal would result in "exceptional and extremely unusual hardship" to their four children who are United States citizens by virtue of their birth in this country. The children range in age from four to thirteen. The Alvarezes assert that if they take the children back to Mexico with them, the children would be forced to endure an educational system and a standard of living considerably worse than in the United States. In addition, the Alvarezes do not believe that they could adequately support their children in Mexico. Alternatively, if the Alvarezes were to leave their children in the United States with relatives, the children would suffer from being separated from their parents.

The IJ found that if the Alvarezes returned to Mexico,

> their standard of living will change considerably. . . . [R]eports on Mexico stat[e] that 40 percent of the population of Mexico is children under 18, and that there are nutritional problems and educational problems. There are children living on the street who are exploited. Certainly life is very difficult for children without parents, and for children with parents the standard of living is very poor.

Rec. at 80. However, the IJ also found that the Alvarezes' case did not satisfy the

3

exceptional and extremely unusual hardship standard because "when Congress passed the legislation concerning cancellation of removal, in the committee reports they noted that they did not want cancellation of removal to be granted simply because families would suffer a worse type of life in another country, an inferior life to that of the United States." *Id.* The IJ concluded by stating,

> Frankly, I believe the hardship would be extreme hardship under the old standard, which would warrant granting the case, but I don't believe the case can be called exceptional, nor extremely unusual. It is a type of hardship that is felt by every family returning to Mexico, except perhaps the very wealthy.

*Id.* at 80-81. The Alvarezes appealed to the BIA, which affirmed, without opinion, the IJ's determination.

On appeal, the Alvarezes argue that the BIA violated the U.S. Constitution because the BIA's "interpretation of the 'exceptional and extremely unusual hardship' standard . . . applies a discriminatory alienage classification in violation of the Due Process Clause of the Fifth Amendment." Pet. Br. at 10. Specifically, they assert that the BIA improperly uses undocumented aliens as the "baseline/normative comparison class" in evaluating the hardship to an alien's U.S. citizen relatives, rather than the proper baseline comparison class of similarly situated U.S. citizens. Pet. Reply Br. at 7. The Alvarezes also argue that the IJ violated the Fifth Amendment rights of the Alvarez children "when he classified them on the basis of their parent's [sic] alienage and national origin,

4

and equated them with Mexican children in general, and aliens from Mexico in particular." *Id*. at 25. The Alvarezes point to the remark of the IJ that the hardship to the Alvarez children is "a type of hardship that is felt by every family returning to Mexico." Rec. at 81. They contend that this demonstrates that the IJ unconstitutionally evaluated the rights of the Alvarez children on the basis of the Mexican citizenship and national origin of their parents rather than their own U.S. citizenship and national origin. Pet. Br. at 25.

As Respondent points out, the threshold issue is whether we have jurisdiction to review the BIA's denial of the Alvarezes' application for cancellation of removal. *See Morales Ventura*, 348 F.3d at 1261. While the Alvarezes' case was pending on appeal, we answered that question in the negative in *Morales Ventura*, a case presenting facts and a constitutional claim nearly identical to the Alvarezes' case. *See id*. at 1261. In *Morales Ventura*, we held that because such a claim did not present a "*substantial* constitutional issue," 8 U.S.C. § 1252(a)(2)(B)(i) divests this court of jurisdiction. *Id*. at 1262 (citing *Gonzalez-Oropeza v. U.S. Attorney General*, 321 F.3d 1331, 1333 (11th Cir. 2003) (per curiam)). Section 1252(a)(2)(B) states

> (2) Matters not subject to judicial review
> . . . .
> (B) Denials of discretionary relief
> Notwithstanding any other provision of law, no court shall have jurisdiction to review –
> (i) any judgment regarding the granting of relief under section 1182(h),

5

> 1182(i), **1229b**, 1229c, or 1255 of this title, or
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added). We observed that although the constitutional claim was "predicated on the status of [the petitioners'] children as United States citizens. . . . '[t]his Court has repeatedly held that the incidental impact visited upon the [citizen] children of deportable, illegal aliens does not raise constitutional problems.'" *Id*. at 1262 (quoting *Delgado v. INS*, 637 F.2d 762, 764 (10th Cir.1980)). Therefore, under the reasoning of *Morales Ventura*, we must dismiss the Alvarezes' appeal for lack of jurisdiction. However, we note, as we did in *Morales Ventura*, that "we leave open whether constitutional concerns might require us to construe § 1252(a)(2)(B)(i) to permit review in some circumstances." *Id*. (citing *Calcano Martinez v. INS*, 533 U.S. 348, 350 n.2 (2001)); s*ee also Ramirez-Perez v. Ashcroft*, 336 F.3d 1001, 1004 (9th Cir. 2003) ("Although we lack jurisdiction to review whether an alien has established exceptional and extremely unusual hardship, we retain jurisdiction to consider whether the BIA's interpretation of the hardship standard violates due process."). As in *Morales Ventura*, the Alvarezes' constitutional claims are "predicated on the status of their children as United States citizens," and such claims do not present "*substantial* constitutional issue[s]" that might permit review. *Morales*

6

*Ventura*, 348 F.3d at 1262.

Accordingly, we dismiss the petition for lack of jurisdiction.

**LUCERO**, J., Circuit Judge, concurring.

Because 8 U.S.C. § 1252(a)(2)(B)(i) divests us of jurisdiction to review discretionary denials of relief, specifically including whether the balance of hardships to United States citizen relatives of deportable aliens weighs in favor of cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D), I concur in the judgment in this case. I write separately, however, to express my view that forcing young American children either to leave the country of their birth and its educational and economic opportunities, or to grow up without the essential guidance and love of their parents might appear to those uninitiated in the current state of immigration law as the type of "exceptional and extremely unusual hardship" intended by Congress.

Yet, in carving out an entire category of cases that do not allow the benefit of judicial review, such as this, we are left with no choice but to deny relief on the facts of this case. If a remedy is to obtain for these types of cases, it must come from Congress, as we have no statutory authority to entertain such pleas.