# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2021

Lyle W. Cayce
Clerk

No. 20-60353

Jose Felipe Guerrero Trejo, also known as Jose Felipe Guerrero,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A205 288 147

Before King, Dennis, and Ho, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

An immigration judge ("IJ") found that Jose Felipe Guerrero Trejo was a removable alien. Guerrero sought to have his removal cancelled, but the IJ denied his application, determining that Guerrero could not be considered for that discretionary relief because he had not shown his removal would result in "exceptional and extremely unusual hardship" to his U.S.-citizen children. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's assessment, and Guerrero now petitions this court for review.

No. 20-60353

We hold that we have jurisdiction to review the IJ and BIA's determination. Although 8 U.S.C. § 1252(a)(2)(B) deprives us of jurisdiction to review the discretionary decision of whether to actually grant cancellation of removal, recent Supreme Court precedent makes clear that applying a legal standard to established facts in order to determine whether an alien is *eligible* for discretionary relief is a question of law, not a discretionary decision. Thus, we may review the IJ's determination that the events that would befall Guerrero's children if he were removed would not amount to "exceptional and extremely unusual hardship" as Congress intended the phrase. Because we find no error in the IJ's conclusion that they would not, Guerrero's petition for review is DENIED.

## I.  Background and Procedural History

Jose Felipe Guerrero Trejo is a native and citizen of Mexico. On April 2, 2012, immigration authorities served Guerrero[1] with a notice to appear alleging that he was removable because he was present in the United States without having been admitted. During his hearing, Guerrero conceded removability, and the IJ accordingly sustained the charge and designated Mexico as Guerrero's country of removal. Guerrero then applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1), which grants the IJ and BIA discretion to cancel an alien's removal if certain statutory prerequisites are met.[2]

_____

[1] Though the Government refers to the Petitioner as "Trejo," he notes in his briefing that Guerrero is his "actual last name" and explains that in the Latin tradition, the paternal and maternal last names are concatenated, with the paternal name appearing first. We accordingly refer to the Petitioner as "Guerrero."

[2] Guerrero in the alternative requested withholding of removal or that he be allowed voluntary departure. Guerrero appears to have promptly abandoned his pursuit of withholding of removal, but the IJ granted his request for voluntary departure, and that ruling is not separately challenged in Guerrero's petition for review.

The IJ held a hearing on Guerrero's application.  Guerrero and his brother testified, both of whom the IJ found credible, and based on the presented evidence, the IJ found the following facts.  Guerrero entered the United States in 2002.  At the time of the IJ's decision, Guerrero was thirty years old and had not left the country since his initial entry.  He was employed as a cook and made approximately $2,200 to $3,000 each month.

Guerrero was legally married to a Guatemalan woman named Lourdes Zamora who, like Guerrero, had no legal status in the United States.  They had three children together, but they were separated, and Guerrero did not live with Zamora or the children.  His eldest child, Natalia, was nine years old, and the remaining two children that lived with Zamora were eight and three years old, respectively.  At the time of the decision, Guerrero was in a relationship with another woman, Delia Fernanda Corea Lopez, and they had two children together—a two-year-old and a four-month-old.  Guerrero lived with Corea, their children, and his brother.

Guerrero financially supported all five of his children, who are all native-born United States citizens and have lived in the country their entire lives.  Corea was not working at the time of the hearing, but she had been employed as a waitress up until the birth of her youngest child four months before.  Zamora had been unemployed for the preceding two years, and each month Guerrero paid to her $300 in child support and $100 to supplement the Medicaid health benefits of his children who lived with her. The eldest child Natalia "has a learning disability associated with" Attention Deficit Disorder ("ADD"), but she had begun "receiving medication" through Medicaid "and [Guerrero] perceive[d] her to be somewhat normal now and believe[d] that the medication [wa]s helping."

The IJ then considered whether Guerrero was eligible for cancellation of removal.  The IJ began by stating that Guerrero was "required to establish

[both] his statutory eligibility for [the] relief" and, because cancellation of removal is "a discretionary form of relief, that the relief should be granted." To be considered for cancellation of removal under 8 U.S.C. § 1229b(b)(1), the IJ continued, Guerrero had to show by a preponderance of the evidence that he (A) had been physically present in the United States continuously for at least ten years; (B) had been a person of good moral character during that time; (C) was not disqualified because of his having committed any of the offenses described in § 1229b(b)(1)(C); and (D) that his removal would result in exceptional and extremely unusual hardship to an immediate relative who is a U.S. citizen or lawful permanent resident. The IJ determined that Guerrero had successfully demonstrated that the first three requirements were satisfied—Guerrero had been physically present in the United States for over sixteen years at the time of the IJ's decision; he had steadily supported his family, paid taxes, and generally respected the laws of the United States during that time, indicating his good moral character; and he had no disqualifying criminal history.

However, the IJ concluded that Guerrero had not established the final prerequisite: that his U.S.-citizen children would suffer "exceptional and extremely unusual hardship" if he were removed. Although the IJ recognized "the seriousness . . . and emotional hardship associated with being separated from minor children," the IJ stated that only hardship beyond what is typically experienced when a family member is removed could be considered. Regarding Guerrero's children's health, the IJ found that there was no evidence that Natalia's ADD had caused "long-term academic consequences"; that she seemed to be doing well on her medication, which was paid for by Medicaid, not Guerrero; and that, if Guerrero were removed, Natalia would continue to receive treatment. The other children were all in good health, the IJ found, and would remain in the custody of their respective mothers, who would provide them with care and homes. The children would

continue their education in the United States, the IJ found. And while Guerrero's family relied upon him financially, the IJ continued, Guerrero was not a single parent, and the children's mothers were capable of working. The IJ further found that Guerrero's brother would likely continue to support Guerrero's younger children, and that Guerrero would be able to find employment in Mexico and could "provide, in possibly diminished support, to his children." Emotionally, the IJ found, the children would experience the same devastation that is normally associated with the loss of one parent but would not require mental health services or counseling. The children would be able to continue to communicate with and potentially visit Guerrero in Mexico following his removal, the IJ stated. Thus, the IJ concluded that in terms of financial, physical, and emotional health, Guerrero had failed to demonstrate that his children "would suffer hardship above and beyond that regularly faced by families who are separated." And, because the IJ found that any hardship the children would experience was not "exceptional and extremely unusual," the IJ concluded that Guerrero was "statutorily ineligible to pursue cancellation of removal pursuant to" § 1229b(b)(1).

The BIA adopted and affirmed the IJ's decision, and Guerrero timely petitioned this court for review. While the petition was pending, the Government filed a motion to dismiss it for want of jurisdiction, arguing that "the determination of what constitutes 'exceptional and extremely unusual hardship' is a discretionary determination that is outside the Court's jurisdiction for judicial review."

## II. Jurisdiction

Congress has granted IJs and the BIA[3] discretion to "cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who" meets certain conditions. 8 U.S.C. § 1229b(b)(1). Specifically, an alien must first demonstrate that he or she "(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; [and] (C) has not been convicted of" any of a list of statutorily enumerated offenses. *Id.* Lastly, to be considered for cancellation of removal, an alien must "(D) establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." If all these requirements are satisfied, the IJ and BIA "may cancel" the alien's removal but are not obligated to do so; satisfying the statutory prerequisites merely makes the alien eligible for the discretionary relief. *See Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215 (5th Cir. 2003) ("Even if an alien satisfies the conditions to qualify for relief, the Attorney General retains discretion to grant or deny the application." (quoting *Sad v. INS*, 246 F.3d 811, 819 (6th Cir. 2001))).

Pursuant to 8 U.S.C. § 1252(a)(1), this court generally has jurisdiction to entertain petitions for review of "final orders of removal" and the determinations that underlie them. But that does not mean that we may

---

[3] Title 8 U.S.C. § 1229b(b)(1) states that "the Attorney General" may cancel an alien's removal when the statutory criteria are met. The Attorney General has delegated this authority to the Executive Office of Immigration Review, which contains, *inter alia*, the immigration courts that adjudicate removal proceedings in the first instance and the BIA, which hears appeals from the decisions of IJs. *See generally* 8 C.F.R. § 1003.0.

No. 20-60353

entertain challenges to every decision the IJ or BIA makes in a removal proceeding. Section 1252(a)(2) specifies a range of issues arising from removal proceedings that "no court shall have jurisdiction to review." Among these is § 1252(a)(2)(B)(i), which excludes from our jurisdiction "[d]enials of discretionary relief," including "any judgment regarding the granting of relief under section . . . 1229(b)," the cancellation of removal statute.

On first blush, § 1252(a)(2)(B)(i) might seem to deprive us of the authority to review any decision related to cancellation of removal. But the provision does not actually sweep so broadly. First, as stated, the subparagraph under which § 1252(a)(2)(B)(i) appears is entitled "Denials of discretionary relief." *See* 8 U.S.C. § 1252(a)(2)(B). In keeping with that title, courts have generally reasoned that, when § 1252(a)(2)(B)(i) states that no court shall review "any judgment regarding the granting of relief" under the cancellation of removal statute, it is not using "judgment" as a synonym for a final order. Rather, "judgment" refers to the adjudicator's independent evaluation of whether to actually cancel the removal of a qualifying alien— that is, the exercise of the adjudicator's "discretionary authority to determine who among the eligible persons should be granted discretionary relief." *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1142 (9th Cir. 2002); *accord, e.g., Singh v. Att'y Gen. U.S.*, 807 F.3d 547, 549 n.3 (3d Cir. 2015); *Mireles-Valdez*, 349 F.3d at 216. Thus, our court has long held that § 1252(a)(2)(B)'s "ban on review of 'judgment[s] regarding the granting of relief' precludes review only of discretionary decisions." *Mireles-Valdez*, 349 F.3d at 216. And the Supreme Court has seemingly endorsed this view, reviewing the BIA's non-discretionary decisions on underlying factual and legal questions pertaining to whether an alien *is eligible to be considered* for cancellation of removal without so much as mentioning § 1252(a)(2)(B). *See Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018); *see also Kucana v. Holder*, 558

U.S. 233, 247 (2010) (stating that the provision shields from review "substantive decisions . . . made by the Executive in the immigration context as a matter of grace").

Second, even if § 1252(a)(2)(B)(i) could be interpreted to insulate all aspects of the cancellation of removal determination from judicial review, that interpretation would be at odds with the so-called "safe harbor" or "limited review provision" contained in § 1252(a)(2)(D), which states, "Nothing in subparagraph (B). . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." Congress enacted § 1252(a)(2)(D) in response to the Supreme Court's decision in *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001). *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1071 (2020). In *St. Cyr*, the Court held that a prior version of § 1252(a)(2) would be constitutionally suspect if it were interpreted to prohibit judicial review of all aspects of the various immigration determinations it applied to, including specifically a petition for *habeas corpus*. *St. Cyr*, 533 U.S. at 300 (quoting *Heikkila v. Barber*, 345 U.S. 229, 235 (1953)). The Court stated that the Constitution, at a minimum, protected the writ of *habeas corpus* "as it existed in 1789," which included a right to a judicial remedy for "detentions based on errors of law, including the erroneous application or interpretation of statutes." *Id.* at 300–301. In a footnote, the Court noted that Congress could amend the statute to provide "an adequate substitute" for *habeas* review "through the courts of appeals," and Congress proceeded to do just that, specifying in § 1252(a)(2)(D) that none of the limits on judicial review contained anywhere in the law prohibited the raising of constitutional violations or other questions of law through a petition for review. *Guerrero-Lasprilla*, 140 S. Ct. at 1071 (citing *St. Cyr*, 533 U.S. at 314, n. 38).

All of this is to say "that our jurisdiction" to review challenges to a cancellation of removal determination "turns on the type of issue that an immigrant raises." *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021). "Sometimes, appellate courts are presented with a 'purely legal' issue (e.g., what do the words of the immigration statute mean?)." *Id.* We may resolve a challenge to this sort of determination even if it occurs in the context of cancellation of removal because, as a non-discretionary decision, it is not barred by § 1252(a)(2)(B), *see Mireles-Valdez*, 349 F.3d at 216, and as a legal determination, § 1252(a)(2)(D) would explicitly exclude it from § 1252(a)(2)(B)'s bar in any event, *see Guerrero-Lasprilla*, 140 S. Ct. at 1071 (citing *St. Cyr*, 533 U.S. at 314 n.38). "Other times, appellate courts are presented with a 'purely factual' issue (e.g., how long has an immigrant lived in this country?)." *Singh*, 984 F.3d at 1148. These, too, we may review when they arise as part of a cancellation of removal decision; because findings of fact are not discretionary "judgments," they do not fall within § 1252(a)(2)(B)'s jurisdictional bar.[4] *See Mireles-Valdez*, 349 F.3d at 216; *Garcia–Melendez v. Ashcroft*, 351 F.3d 657, 661 (5th Cir. 2003) (describing the continuous physical presence requirement as "a factual determination which is subject to appellate review"). Still other times, "appellate courts . . . consider an issue that the law leaves to the discretion of an agency," *Singh*, 984 F.3d at 1148, (e.g., did the adjudicator act irrationally when it decided not to grant cancellation of removal to a qualifying alien?). This alone is the sort of issue that § 1252(a)(2)(B) generally prohibits courts from reviewing in the

---

[4] This stands in contrast to one of § 1252(a)(2)'s other provision, § 1252(a)(2)(C), which also "forbid[s] appeals of factual determinations" made in the removal proceedings of aliens who are found to have committed any of a list of enumerated criminal offenses. *Guerrero-Lasprilla*, 140 S. Ct. at 1073. Unlike with § 1252(a)(2)(B), there is no indication § 1252(a)(2)(C) was intended to "preclude[] review only of discretionary decisions." *Mireles-Valdez*, 349 F.3d at 216.

context of immigration, including expressly in the context of cancellation of removal. *Mireles-Valdez*, 349 F.3d at 216.

With this background established, what remains is to classify the type of challenge Guerrero raises to the denial of his application for cancellation of removal. Our court has traditionally held that an IJ's or the BIA's determination of whether an alien has demonstrated exceptional and extremely unusual hardship is a discretionary decision that § 1252(a)(2)(B) bars from judicial review. *See, e.g.*, *Sattani v. Holder*, 749 F.3d 368, 372 (5th Cir. 2014) (per curiam); *Sung v. Keisler*, 505 F.3d 372, 377 (5th Cir. 2007); *Rueda v. Ashcroft*, 380 F.3d 831, 831 (5th Cir. 2004) (per curiam). But recent developments from the Supreme Court have rendered that conclusion untenable.

In *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020), the Supreme Court identified a fourth type of question appellate courts are faced with—neither purely legal (as some have used the term), purely factual, nor committed to the adjudicator's discretionary choice. The Court considered whether § 1252(a)(2)(D)'s proviso that none of the jurisdiction-stripping provisions in the Immigration and Nationality Act prohibit the review of "constitutional claims or questions of law" covered so-called "mixed questions," or the "the application of a legal standard to . . . established facts." *Id.* This is precisely how the BIA describes the eligibility-for-cancellation-of-removal hardship inquiry. *See, e.g.*, *Matter of Gamero*, 25 I. & N. Dec. 164, 165 (BIA 2010) ("Further, upon *de novo* review of the Immigration Judge's application of the pertinent legal standards, we agree that the respondent did not establish eligibility for cancellation of removal because he failed to show that his removal would result in exceptional and extremely unusual hardship to any of his qualifying relatives.").

No. 20-60353

The *Guerrero-Lasprilla* Court rejected the contention that § 1252(a)(2)(D) "refers only to 'pure' questions [of law] and necessarily excludes the application of law to settled facts." *Id.* at 1070. The ordinary meaning of the statute's language, the presumption that administrative action is judicially reviewable, the explicit use of the term "question of law" to refer to the application of law to facts elsewhere in the statute, and the fact that § 1252(a)(2)(D) was enacted following *St. Cyr* for the express purpose of establishing an adequate substitute for *habeas* review that included the application of law to facts were all factors that weighed in favor of "mixed questions" being reviewable, the Court concluded. *Id.* at 1068-72. Moreover, holding otherwise would grant the BIA *carte blanche* to violate the rights of aliens so long as it recited the correct legal standard; "the Board would be free to apply [the standard] in a manner directly contrary to well-established law." *Id.* at 1073. Such a reading would be "difficult to reconcile with the Provision's basic purpose of providing an adequate substitute for habeas review," the Court concluded. *Id.*

Two of our sister circuits have since held that *Guerrero-Lasprilla* effectively overruled their prior decisions holding that an IJ's or the BIA's hardship determination is a matter of discretion that § 1252(a)(2)(B) shields from review.[5] First, in a different context, the Eleventh Circuit relied in part on *Guerrero-Lasprilla* in holding that there is no principled distinction between the hardship determination and the other cancellation-of-removal eligibility requirements. *See Patel v. United States Att'y Gen.*, 971 F.3d 1258, 1278-79 (11th Cir. 2020) (en banc), *cert. granted,* No. 20-979, 2021 WL 2637834 (U.S. June 28, 2021). The court noted that considering the hardship inquiry discretionary is inconsistent with previous statements from the

---

[5] Our court has already implicitly followed suit in an unpublished decision. *See Avila-Baeza v. Barr*, 827 F. App'x 414, 415 (5th Cir. 2020).

11

Supreme Court that "[e]ligibility [for discretionary relief] is governed by specific statutory standards which provide a right to a ruling on an applicant's eligibility." *Id.* at 1278 (quoting *Jay v. Boyd*, 351 U.S. 345, 353 (1956)). The court acknowledged that "statutory standards for eligibility [that] are less specific . . . give[] an immigration judge more leeway in interpreting and applying the law." *Id.* But the court determined that Congress's tasking the agency with applying a vague or qualitative legal standard does not make a decision discretionary. "[Q]ualitative standards such as 'good moral character' or 'exceptional and extremely unusual hardship' are not in themselves discretionary decisions. An immigration judge must find that the alien meets such standards before she can grant relief," the court reasoned. *Id.* There is no reason to think that Congress intended for courts to be able "to assess the evidence for the more objective eligibility requirements, such as residency requirements, while being barred from weighing the evidence for the qualitative requirements," the court concluded.[6] *Id.* at 1279.

The Sixth Circuit similarly held that, following *Guerrero-Lasprilla*, it is clear that whether an alien has demonstrated that sufficient hardship would result from his or her removal is a "mixed question," not a discretionary decision. *See Singh,* 984 F.3d at 1150. The court first looked to the statutory text, noting that Congress typically signals a grant of discretion either by

---

[6] Although the Eleventh Circuit concluded that the hardship inquiry and similar eligibility determination are non-discretionary after *Guerrero-Lasprilla*, the *en banc* court concluded that § 1252(a)(2)(B) sweeps much wider than we and other courts have held, shielding from review *all* determinations made by IJs and the BIA when adjudicating applications for discretionary relief, regardless of whether they are discretionary, save for those specifically carved out by § 1252(a)(2)(D)'s exception for questions of law. *Patel*, 971 F.3d at 1262; *contra Mireles-Valdez*, 349 F.3d at 216. The alien filed a petition for certiorari, and, shortly before the filing of this opinion, the Supreme Court granted it, agreeing to determine whether § 1252(a)(2)(B) applies to non-discretionary predicate determinations of eligibility. *See Patel v. Garland*, No. 20-979, 2021 WL 2637834 (U.S. June 28, 2021).

saying the adjudicator "may" take an action, explicitly stating that an adjudicator has discretion, or stating that the adjudicator can undertake an action if the adjudicator finds that it is warranted. *Id.* at 1150-51 (citing 8 U.S.C. §§ 1158(b)(2)(A)(v), 1255(j)(2), 1231(b)(2)(C); 17 U.S.C. § 505; 18 U.S.C. § 3582(c)(1)(A); and 42 U.S.C. § 1988(b)). The cancellation-of-removal statute states that immigration authorities "may" cancel removal if the various prerequisites—including the hardship showing—are met, the court reasoned, not that the adjudicator "may" decide whether hardship exists. *Id.* at 1151.

> Nothing in this text suggests that the Board . . . has discretion to decide whether hardship exists. To be sure, the statute does use the verb "may." But one must distinguish the Board's final discretionary decision whether to grant cancellation of removal . . . from its earlier eligibility decision whether the immigrant has shown hardship . . . . The statute's use of the verb "may" makes the final decision discretionary, so the Board may deny relief even if an immigrant proves all four eligibility factors. But the statute does not use the word "may" when delineating the eligibility requirements. It does not say, for example, that the Attorney General "may" find the required hardship. Nor does it say that this hardship finding is in the "Attorney General's sole discretion." *Cf.* 8 U.S.C. § 1229b(b)(2)(D). Simply put, the plain text does not leave the hardship decision (as compared to the final cancellation-of-removal decision) to agency "discretion."

*Id.* (some internal citations omitted). The Sixth Circuit then noted that the BIA's own precedents treat the hardship determination as a legal one, applying *de novo* review and stating that a hardship determination involves the "application of the pertinent legal standards" to the facts found by the immigration judge. *Id.* (quoting *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 591 (B.I.A. 2015) and *Gamero*, 25 I. & N. Dec. at 165); *see also In Re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 58 (BIA 2001) (applying *Chevron, U.S.A., Inc.*

*v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), to interpret the statute and identify the appropriate legal standard).

The Sixth Circuit next considered the structure of the statute, following similar reasoning to the Eleventh Circuit's. *Id.* No one would contest that the other eligibility qualifications, including an alien's being physically present in the country for ten years and not being convicted of a disqualifying crime, were matters committed to the agency's discretion, the court stated. *Id.* "Why should the 'hardship' requirement be different?" *Id.* The statute also uses explicit language elsewhere suggesting that a *different* hardship determination *is* a matter of discretion, the court pointed out, and the absence of such language in § 1229b(b)(1)(D) confirms that the eligibility-for-cancellation-of-removal hardship determination is *not* discretionary. *Id.* at 1152 (quoting 8 U.S.C. § 1182(i) (stating that the Attorney General may waive inadmissibility "if it is established *to the satisfaction of the Attorney General* that the refusal of admission to the United States of such immigrant alien would result in extreme hardship" to the immigrant or certain relatives (emphasis in *Singh*))).

Last, the Sixth Circuit noted the history of the cancellation-of-removal statute. Prior to 1996, "cancellation of removal" was called "suspension of deportation," the court stated, and the earlier statute permitted the Attorney General to suspend an immigrant's deportation if, *inter alia*, the immigrant was "a person whose deportation would, *in the opinion of the Attorney General*, result in extreme hardship to the" immigrant or relatives. *Id.* (quoting 8 U.S.C. § 1254(a)(1) (1994) (emphasis in *Singh*)). The prior text distinguished the hardship factor from the other eligibility requirements, committing it to the discretion of the Attorney General. *Id.* But Congress removed the "in the opinion of the Attorney General" language when it amended the statute in 1996, indicating that the decision was no longer discretionary, the court continued. *Id.* at 1152-53 (citing Illegal Immigration

Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-594 (1996)). That courts continued to treat the determination as discretionary may have just been the product of inertia, the court posited. *Id.* at 1153. "In sum, the statutory text, structure, and history convince us that the Board's ultimate hardship conclusion is the type of mixed question that we have jurisdiction to review after *Guerrero-Lasprilla*," the court concluded. *Id.*

When faced with the same question, two of our other sister circuits have disagreed that a cancellation-of-removal hardship determination is a non-discretionary mixed question after *Guerrero-Lasprilla*. The Third Circuit simply stated without elaboration that "a disagreement about weighing hardship factors is a discretionary judgment call, not a legal question." *Hernandez-Morales v. Att'y Gen. United States*, 977 F.3d 247, 249 (3d Cir. 2020). But in *Galeano-Romero v. Barr*, 968 F.3d 1176, 1183 (10th Cir. 2020), the Tenth Circuit provided several reasons as to why it believed "such a challenge does not raise a § 1252(a)(2)(D) 'question[ ] of law.'"

"With respect to our colleagues on the Third and Tenth Circuits," *Singh*, 984 F.3d at 1142, the Sixth and Eleventh Circuits have the better analysis, and the reasons offered by the *Galeano-Romero* court do not hold up to scrutiny. First, the court stated that interpreting § 1252(a)(2)(D) to permit review of a hardship determination would render § 1252(a)(2)(B) "superfluous, a nullity." *Galeano-Romero*, 968 F.3d at 1183. But permitting review of an eligibility-for-cancellation-of-removal hardship determination does nothing to displace § 1252(a)(2)(B) from its proper sphere—preventing courts from second guessing an exercise of the agency's "discretionary authority to determine who among the eligible persons should be granted discretionary relief." *Montero-Martinez*, 277 F.3d at 1142; *accord Mireles-Valdez*, 349 F.3d at 216. Section 1252(a)(2)(B) would continue to prohibit judicial review of the IJ or BIA's decision on whether to *actually grant*

cancellation of removal to an alien who has met the statutory prerequisites, so it is hardly superfluous. *Mireles-Valdez*, 349 F.3d at 215 (citing *Sad*, 246 F.3d at 819).

Next, the Tenth Circuit appeared to argue that the hardship determination should be singled out from among the other cancellation qualifications and treated as a discretionary decision because "exceptional and extremely unusual hardship" is a more vague or subjective standard. *See Galeano-Romero*, 968 F.3d at 1183 ("There is no algorithm for determining when a hardship is 'exceptional and extremely unusual.'" (quoting *Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003))). But, as the Sixth Circuit pointed out in *Singh*, "Congress commonly uses similar phrases" in contexts where it is clear judicial review is expected. 984 F.3d at 1152. "The bankruptcy laws, for example, prohibit a debtor from obtaining a discharge of certain student-loan debts unless the debts impose an 'undue hardship' on the debtor." *Id.* (quoting 11 U.S.C. § 523(a)(8)). Courts have not found the question of whether "undue hardship" exists to be so subjective an inquiry that no standard exists, but rather have explicitly treated the question as a "mixed question" subject to *de novo* review—the exact sort of issue *Guerrero-Lasprilla* contemplated. *See id.* (citing *Long v. Educ. Credit Mgmt. Corp.*, 322 F.3d 549, 553 (8th Cir. 2003) (collecting cases)). Indeed, in *Guerrero-Lasprilla* itself, the Supreme Court held that courts may review the BIA's application of the "due diligence" standard, which "is no less subjective than the application of the hardship standard" at issue here. *Id.* at 1153. The same could likely be said for "good faith," which we have likewise held is a nondiscretionary application of a legal standard to facts in the context of determining whether an alien is eligible for discretionary relief. *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234 (5th Cir. 2009). Moreover, a very well-established legal framework exists for courts to evaluate an agency's interpretation and application of a vague and ambiguous statute, and the BIA

has explicitly cited this framework in reference to the eligibility-for-cancellation-of-removal hardship determination. *See Monreal-Aguinaga*, 23 I. & N. Dec. at 58 (citing *Chevron*, 467 U.S. at 842–43). Courts are thus amply equipped to determine whether the BIA's interpretation and application of the "exceptional and extremely unusual hardship" standard falls within the bounds that Congress intended.

Lastly, the *Galeano-Romero* Court noted that "*Guerrero-Lasprilla* concerned § 1252(a)(2)(C)," which prohibits review of removals based on an alien's commission of certain crimes, "—not § 1252(a)(2)(B)," which prohibits review of the agency's discretionary decisions. *Galeano-Romero*, 968 F.3d at 1184 n.9. But this is a distinction without a difference. The Supreme Court in *Guerrero-Lasprilla* was interpreting the term "question of law" in § 1252(a)(2)(D), a provision that, by its plain text, limits the reach of *both* "subparagraph (B) [and] (C)." *See* § 1252(a)(2)(D) ("*Nothing in subparagraph (B) or (C)*, or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." (emphasis added)). Thus, we are somewhat puzzled by the *Galeano-Romero* Court's statement that "[i]n [*Guerrero-Lasprilla*], the Court had no reason to address the particular dynamic involved here—the interaction between one subsection that prevents review over certain Board decisions and another subsection that allows for judicial review over questions of law or constitutional issues." *Galeano-Romero*, 968 F.3d at 1184 n.9. This is exactly the dynamic *Guerrero-Lasprilla* addressed: the interaction of the prohibition in § 1252(a)(2)(C) with § 1252(a)(2)(D)'s allowance for judicial review over questions of law. There is no principled reason why its holding does not apply with equal force to the interaction of the prohibition

in § 1252(a)(2)(B) with § 1252(a)(2)(D)'s allowance for judicial review over questions of law.

To sum up, when the IJ and BIA consider an application for cancellation of removal, they are faced with several distinct questions. First, they must make a number of factual findings, including how long the alien has been physically present in the country, how the alien behaved during that time, whether the alien was previously convicted of any crimes, and what would occur to the alien's U.S.-citizen or legal-permanent-resident family members if the alien were removed. Section 1252(a)(2)(B) does not prevent us from reviewing these factual findings to determine whether they are supported by substantial evidence in the record because factual findings are not discretionary. *See Mireles-Valdez*, 349 F.3d at 216; *Garcia–Melendez*, 351 F.3d at 661. Next, the adjudicator applies the various legal standards contained in 8 U.S.C. § 1229b(b)(1)(A) through (D) to those established facts to determine whether the alien is eligible to be considered for cancellation of removal. The adjudicator decides whether the previously found period of physical presence was ten years or more, whether the previously found behavior the alien engaged in during that period qualifies as good moral character as Congress intended the phrase, whether any previously found criminal convictions are disqualifying, and whether the previously found events that would occur to the alien's relatives if the alien were removed amount to exceptional and extremely unusual hardship as Congress intended the phrase. Under *Guerrero-Lasprilla*, we may review these determinations, too; determining whether an alien is legally eligible for cancellation of removal is not discretionary, but rather "the application of a legal standard to . . . established facts." *Guerrero-Lasprilla*, 140 S. Ct. at 1067; *accord Jay v. Boyd*, 351 U.S. at 353 ("Eligibility [for discretionary relief] is governed by specific statutory standards which provide a right to a ruling on an applicant's eligibility."); *Alvarado de Rodriguez*, 585 F.3d at 234 ("[T]he

predicate legal question of whether the IJ properly applied the law to the facts in determining the alien's eligibility for discretionary relief is a question of law properly raised in a petition for review." (citation and inner quotes omitted)). Put another way, a decision that an alien has not met any of the eligibility criteria is a determination that the IJ and BIA *lack* any discretion to cancel the alien's removal. *Cf. Melendez v. McAleenan*, 928 F.3d 425, 426–27 (5th Cir.) ("We hold, then, that the denial of Melendez's adjustment application was a nondiscretionary decision based on the finding he was statutorily ineligible, making Section 1252(a)(2)(B)(i)'s jurisdictional bar inapplicable."), *cert. denied,* 140 S. Ct. 561 (2019). Only after the adjudicator has determined that the alien may be legally considered for cancellation of removal does the adjudicator's discretion enter the picture, when he or she is called upon to decide whether to *actually grant* cancellation to a qualifying alien. *Singh,* 984 F.3d at 1151; *Mireles-Valdez*, 349 F.3d at 215; *Montero-Martinez*, 277 F.3d at 1142. This is the decision that is shielded from judicial review by § 1252(a)(2)(B)(i), for it is a "substantive decision[] . . . made by the Executive in the immigration context as a matter of grace." *Kucana*, 558 U.S. at 247.

Guerrero does not challenge the IJ or BIA's decision not to grant him cancellation of removal, but rather their determination that he did not legally qualify to be *considered* for cancellation of removal. He argues that the IJ erred in its assessment of the severity of Natalia's disability and by determining that his children's mothers were capable of working. These are challenges to the IJ's initial factual determinations. He also states that "the viability of the family structure depends on the parents working together as a team even if they are not residing at the same address," that his case is similar to a prior case in which the BIA found an applicant eligible for cancellation of removal, and that "[a] proper consideration of the totality of the circumstances leads one to conclude that the children in this case will suffer exceptional and

extremely hardship if [he] is [removed]." This suggests that he disagrees with the IJ's determination that the events that would befall his children do not meet the legal standard for cancellation eligibility. Neither of these challenges implicates the IJ or BIA's discretionary decision to grant or deny cancellation of removal to a qualifying alien, and thus § 1252(a)(2)(B) is no bar to our jurisdiction. *See Alvarado de Rodriguez*, 585 F.3d at 234.

## III.    Standard of Review

We have authority to review both the IJ's and BIA's decisions when the IJ's decision influenced the BIA's, including where, as here, the BIA adopted the IJ's findings and conclusions. *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997). "We review the factual findings of the [IJ and] BIA under the substantial evidence standard, reversing only when the evidence compels a contrary result." *Alvarado de Rodriguez*, 585 F.3d at 233 (citing *Nakimbugwe v. Gonzales*, 475 F.3d 281, 283 (5th Cir. 2007)). We review the IJ and BIA's legal conclusions *de novo*, subject to *Chevron* deference when appropriate. *Calvillo Garcia v. Sessions*, 870 F.3d 341, 344 (5th Cir. 2017).

## IV.    The Merits

As stated above, Guerrero raises several challenges to the IJ and BIA's factual findings and legal conclusions.[7]

First, he argues that the diagnosis of his oldest child, Natalia, was ongoing at the time of the decision and that the extent of her disability was not completely evident. Guerrero appears to contend that the IJ and BIA

---

[7] The Government raises no counterarguments on the merits, contending only that this court lacks jurisdiction to consider the matter. Nonetheless, it is Guerrero's burden to show the BIA erred, *see Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) (citing *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)), so the Government's lack of counterargument is not dispositive.

were mistaken when they found that Natalia's mental health issues had not and would not cause long-term academic consequences, that she was doing well on her medication, and that she would continue to receive sufficient treatment through Medicaid if Guerrero were removed.

Guerrero testified that Natalia had been on medication for five to six months; that Medicaid paid for the medication; and that, although "she is a little bit distracted," he "see[s] her as normal" and "believe[s] that the treatment has helped her a little bit." Guerrero argues that he is neither an educator nor a physician, and so his observation that Natalia appears to be normal was of limited medical reliability. He thus states that "[t]here is nothing in the record" to support the IJ's finding that Natalia's disorder will not prevent her from achieving an education. But this misses the point. The burden was on Guerrero to establish his eligibility for cancellation of removal, *Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019), and thus he was required to introduce evidence that Natalia's disorder *would* cause her exceptional and extremely unusual hardship if he were removed. That there is no evidence compelling a finding that Natalia's disorder would prevent her from achieving an education in his absence is sufficient to sustain the IJ and BIA's finding. *See Morales v. Sessions*, 860 F.3d 812, 818 (5th Cir. 2017).

Guerrero further argues that Natalia would have a difficult time adjusting to foreign language instruction and would not be able to receive Government assistance for her medical treatment in Mexico, but as Guerrero himself points out, he testified that his children would not be able to move to Mexico with him if he were removed due to the lack of accommodations. The IJ found that Natalia and Guerrero's other children will remain in the care and custody of their respective mothers and continue their education in the United States if Guerrero is removed, so the difficulties Natalia would allegedly experience if she were forced to move to Mexico are not relevant here. Guerrero additionally asserts that his role in Natalia's life has been

significant, suggesting that the IJ and BIA erred by not finding that Natalia would suffer additional hardship beyond what was identified, but he provides no specifics and points to no evidence in the record indicating that this is case.

Guerrero also argues that the IJ and BIA erred by determining that the children's respective mothers could support the children because they are not legally authorized to work outside the home. But Guerrero testified that both women had worked in the past—one as recently as four months prior to the hearing. Guerrero has not demonstrated that "the [record] evidence both supports and compels a contrary result" to the IJ's factual findings, as is required for reversal under the substantial evidence standard. *Id.*

Guerrero also challenges the IJ and BIA's legal conclusion that what would occur to his U.S.-citizen children would not amount to "exceptional and extremely unusual hardship" within the meaning of 8 U.S.C. § 1229b(b)(1)(D). In *In Re Monreal-Aguinaga*, the BIA announced its current interpretation of the statute, stating that an alien must demonstrate a "truly exceptional" situation in which a qualifying relative would suffer consequences "'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country." 23 I. & N. Dec. at 62 (citing H.R. Conf. Rep. No. 104-828). As this court has noted in an unpublished decision, every court to have considered the question thus far has concluded that this is a reasonable interpretation of 8 U.S.C. § 1229b(b)(1)(D) that is entitled to *Chevron* deference. *Avila-Baeza*, 827 F. App'x at 416 (citing *Ocampo-Guaderrama v. Holder*, 501 F. App'x 795, 798-99 (10th Cir. 2012); *Pareja v. Att'y Gen.*, 615 F.3d 180, 190-95 (3d Cir. 2010); *Ramirez-Perez v. Ashcroft*, 336 F.3d 1001, 1006-07 (9th Cir. 2003); and *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1333-34 (11th Cir. 2003)). Guerrero raises no arguments as to why this is not so.

Instead, Guerrero argues that his case is similar to *In re Recinas*, 23 I&N Dec. 467, 471 (BIA 2002), in which the BIA concluded that a single mother who raised six children without any ongoing support from their father had established that her qualifying children and other relatives would experience exceptional and extremely unusual hardship if she were removed. But *Recinas* is distinguishable in a number of ways. In *Recinas*, the BIA "emphasize[d] that the respondent [wa]s a single parent who is solely responsible for the care of six children," who would have to move to Mexico with her, where they had "no family to return to." *Id.* The BIA concluded that these "critical factors . . . distinguish[ed] her case from many other cancellation of removal claims." *Id.* In contrast, Guerrero's children's mothers care for them, his brother lives with the youngest two, the children will not move to Mexico with Guerrero, and Guerrero has family in Mexico in any event. Guerrero has not shown that the events that the agency found would befall his U.S.-citizen children if he were removed amount to suffering substantially beyond the hardship usually associated with a parent's removal, *see In Re Monreal-Aguinaga*, 23 I. & N. Dec. at 62, and he thus has not shown that the IJ or BIA erred in applying the pertinent legal standard.

## V. Conclusion

For the foregoing reasons, we hold that we have jurisdiction to review Guerrero's challenge to the IJ and BIA's decision that he is not eligible for cancellation of removal. The Government's motion to dismiss is therefore DENIED. However, Guerrero has not demonstrated an error of fact or law in the agency's decision. Accordingly, his petition for review is DENIED.