# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 6, 2021

Lyle W. Cayce
Clerk

No. 20-60598

Hector Raul Orellana-Martinez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 205 842 051

Before Jones, Smith, and Haynes, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:*

Hector Orellana-Martinez, a native and citizen of Honduras, petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal from the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We deny the petition.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60598

## I.

Orellana-Martinez attempted to enter the United States in February 2013 without being admitted or paroled. The Department of Homeland Security initiated removal proceedings, filing a Notice to Appear ("NTA") that charged Orellana-Martinez with removability under 8 U.S.C. § 1182(a)(6)(A)(i). At a hearing, he admitted the allegations in the NTA, thereby conceding that he was removable. He then filed an application for asylum, withholding of removal, and protection under CAT. In his application, he asserted that he had been beaten and threatened because of his work for the Honduran National Party and that his assailants were gang members affiliated with an opposing party.

At the removal hearing, Orellana-Martinez testified that four or five masked men pulled him from his motorcycle on his way home from a political gathering, called him a traitor, beat him so severely that he lost consciousness, and threatened future harm. Orellana-Martinez provided medical documentation showing that he sought medical care for his injuries and also produced a police report indicating that he had reported his attack.

Orellana-Martinez did not indicate to the police, however, that the assault was in anyway political; instead, he told them only that he had been beaten by some men and that they threatened him and his family "if he did not leave his house." At his hearing, Orellana-Martinez testified that he failed to tell the police about his assailants' political motive because he was afraid that corrupt police officers might inform his attackers and provoke a reprisal. He further testified that he could not give the police an accurate description of the perpetrators because they wore masks.

Orellana-Martinez also provided two affidavits from acquaintances confirming the attack, but neither affidavit indicated that the attack was politically motivated. Orellana-Martinez testified that his acquaintances were

also afraid to report that political animus was the impetus for the assault. Orellana-Martinez asserts that, after the attack, he received five or six threatening phone calls and that cars menacingly circled his house. He contends that that intimidation prompted him to come to the United States.

The immigration judge ("I.J.") denied Orellana-Martinez's application. The I.J. determined that Orellana-Martinez was credible and that the harm inflicted on him because of his political opinion was severe enough to rise to the level of persecution. The I.J. observed, however, that the harm was not inflicted by the Honduran government and concluded that Orellana-Martinez failed to establish that the government was unable or unwilling to control his persecutors. The I.J. thus concluded that Orellana-Martinez failed to establish past persecution.

The I.J. also determined that Orellana-Martinez had failed to show an objectively reasonable fear of future persecution because he did not provide evidence that his assailants still live in his home city or want to harm him. The I.J. further noted that Orellana-Martinez was not harmed during the months he lived in Honduras after he ceased political work. The I.J. pointed out that the National Party—the party for which Orellana-Martinez had campaigned—was currently the party in power, citing that fact as further evidence that Orellana-Martinez failed to show the government was unable or unwilling to control his persecutors. Finally, the I.J. determined that Orellana-Martinez had not satisfied the higher standard of proof for withholding of removal and concluded that he failed to show that he was more likely than not to be tortured, thus denying his claim for protection under CAT as well.

Orellana-Martinez appealed. The BIA adopted and affirmed the I.J.'s decision and dismissed the appeal. The Board agreed with the I.J. that Orellana-Martinez failed to show that the Honduran government was unable

No. 20-60598

or unwilling to protect him, noting that he failed to tell the police about the political motive of his attackers and did not give the police any physical description of the men.  The BIA also observed that Orellana-Martinez failed to inform the police of the calls and drive-by intimidation he suffered after the attack.  The Board further concluded that Orellana-Martinez could have reasonably relocated to a different area of Honduras and therefore had not shown a reasonable possibility of future persecution.  Additionally, the BIA agreed with the I.J. that it was significant that the National Party had become the governing party in the country.  Finally, the Board concluded that Orellana-Martinez had not satisfied the requirements for withholding of removal or for protection under CAT.  The Board thus dismissed his appeal.

## II.

In general, we may review the I.J.'s decision only to the extent that it influenced the BIA's decision, *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018), but where, as here, the Board adopted the I.J.'s decision, we may review both, *Trejo v. Garland*, 3 F.4th 760, 774 (5th Cir. 2021).  We review the factual findings of those decisions "under the substantial evidence standard, reversing only when the evidence compels a contrary result," *id.* (quoting *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 233 (5th Cir. 2009)); we review legal determinations *de novo*, *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001) (per curiam).

To be eligible for asylum, an applicant must show that "he is 'unable or unwilling to return to . . . [and] avail himself or herself of the protection of [his home] country because of persecution or a well-founded fear of perse-cution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (quoting 8 U.S.C. § 1101(a)(42)(A)) (alterations and omis-sions in original).  Where an applicant shows that he suffered past persecu-

4

No. 20-60598

tion on one of those bases, "there is a rebuttable presumption that he has a well-founded fear of future persecution." *Id.* But if he cannot establish past persecution, he must "affirmatively establish a well-founded fear of persecution that is both subjectively held and objectively reasonable." *Id.*

Where, as here, an applicant does not allege that the government is his persecutor, he must show that the "government is unable or unwilling to control" the private actors in question. *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006) (citing 8 C.F.R. § 1208.13(b)(1)). For the actions of private actors to qualify as persecution, the applicant must show that "the government 'condoned [the acts] or at least demonstrated a complete helplessness to protect the victims.'" *Shehu v. Gonzales*, 443 F.3d 435, 437 (5th Cir. 2006) (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)).

### III.

Orellana-Martinez presents a single issue for review: whether the I.J. and BIA erred in concluding that Orellana-Martinez failed to establish past persecution.[1] He contends that he established that the government was unable or willing to control his assailants because the "police did little to nothing to investigate his attack." Orellana-Martinez contends that that failure is especially egregious in light of the intimidation he suffered after his assault. He cites *Ivanov v. Holder*, 736 F.3d 5 (1st Cir. 2013), in which Ivanov, a refugee from Russian persecution, suffered multiple attacks over several

---

[1] Orellana-Martinez raises no claim regarding the denial of his requests for withholding of removal and protection under CAT and has therefore waived any argument concerning the denial of those forms of relief. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003). Moreover, Orellana-Martinez fails to address or challenge the BIA's conclusion that he could reasonably relocate within Honduras to avoid persecution. Thus, apart from contending that he is entitled to a rebuttable presumption based on a demonstration of past persecution, he has abandoned any argument that he has a well-founded fear of future persecution because of his political opinion. *See id.*

5

years from skinheads because of his religious status, *id.* at 8–10. The court determined that the police's inaction was sufficient for Ivanov to establish that the government was unwilling or unable to control his persecutors. *Id.* at 14. Orellana-Martinez asserts that the same is true here.

*Ivanov* is readily distinguishable. First and most importantly, there is nothing to suggest that Ivanov failed to inform the police that his persecutors targeted him because he was a religious minority. *See id.* at 13–14. In contrast, Orellana-Martinez admits that he never informed the police that his assailants were politically motivated. Second, although Ivanov and his family reported his assaults to the police more than once, *id.* at 9–10, Orellana-Martinez failed to report the harassment following his initial assault, submitting only one complaint to the police.[2] Third, Ivanov produced at least some evidence that police were colluding with the skinheads in his persecution. *See Ivanov*, 736 F.3d at 13 (observing that one assault came after a police officer failed to persuade Ivanov to testify against his pastor). Orellana-Martinez has produced no such evidence of police collusion with his assailants. His citation to *Ivanov* is therefore unhelpful.

Orellana-Martinez also contends that a U.S. Department of State 2012 Human Rights report that discusses Honduran police corruption supports his assertion that the government was unable or unwilling to protect him. He avers that he was justified in not reporting the political motives of his assailants and his subsequent harassment because the police are corrupt. Although the report does allege police corruption, it does not indicate that that corruption is of a political nature such that Orellana-Martinez should have reasonably feared reprisal for giving the police an accurate account of

---

[2] *Cf. Sharma v. Barr*, 794 F. App'x 448, 449 (5th Cir. 2020) (per curiam) (determining the applicant failed to show the government was unable or unwilling to protect him where he failed to report the harms and threats he suffered from private actors).

No. 20-60598

his attack and later intimidation.[3]  "[W]hile Honduras suffers widespread police corruption, the country is nonetheless taking meaningful steps to address these problems." *Gutierrez v. Garland*, 12 F.4th 496, ___ (5th Cir. 2021) (internal quotation marks omitted). *Accord Martinez-Lopez v. Barr*, 943 F.3d 766, 772–73 (5th Cir. 2019).  Thus, Orellana-Martinez's "speculative opinion that the government would not protect him and that contacting [the police] would only make matters worse" is insufficient to establish that the government was unable or unwilling to stop his assailants. *Ramirez-Medrano v. Sessions*, 722 F. App'x 395, 396 (5th Cir. 2018) (per curiam).  Because Orellana-Martinez has not shown that the government of Honduras "condoned" his assault or "demonstrated a complete helplessness" to stop his assailants, the I.J. and BIA did not err in finding that Orellana-Martinez failed to establish past persecution.  *Galina*, 213 F.3d at 958.

The petition for review is DENIED.

---

[3] *Cf. Arevalo-Velasquez v. Whitaker*, 752 F. App'x 200, 202 (5th Cir. 2019) (per curiam) (stating that an applicant's "subjective belief" that reporting abuse to the police would be futile because "the police can be bribed . . . is not sufficient to compel a conclusion that the Honduran government was unable or unwilling to protect" the applicant).